**PEARSON v. LAWS et al.**

No. 9390.

Court of Civil Appeals of Texas. Austin.

July 21, 1943.

Emmett Shelton, of Austin, for appellant.

Hart & Brown, of Austin (by James P. Hart, of Austin), for appellees.

BLAIR, Justice.

Appellant, R. Pearson, sued appellee O. T. Olson, independent executor of the estate of C. P. Eklund, deceased, for services rendered in handling rentals and other business for Eklund, and for services rendered by Pearson's wife, the daughter of Eklund, in nursing him during the last two years of his lifetime. The executor filed an answer with the petition; and on the same day appellant recovered judgment for $150 for his services and $284 for the services of his wife, who was one of the devisees under Eklund's will. Thereafter, appellees Preston Laws and his wife, Margaret Nelson Laws, the granddaughter and other devisee under Eklund's will, sued in the nature of a bill of review to set aside the judgment. This was done; and by answer appellees denied that appellant and his wife had rendered the services claimed, or that Eklund had agreed to pay for such services. At the conclusion of the evidence, special exceptions taken under advisement were sustained to appellant's petition, and he was given leave to amend, which he did, alleging, in addition to an express agreement, an implied agreement with Eklund to pay for the services. Appellees then moved for an instructed verdict, which was granted, and judgment was accordingly rendered for the executor and appellees.

Appellant makes the point that the evidence was sufficient to raise jury issues as to whether Eklund either expressly or impliedly agreed to pay appellant and his wife for the services rendered. We hold the evidence insufficient for two reasons, as follows:

1. It did not show either an express or implied agreement with Eklund to pay for the services rendered by appellant and his wife.

2. It fixed no value of the services upon which a jury verdict or a judgment could be based or sustained.

After the death of his wife, Eklund lived in the home of appellant and his wife, paying $30 per month for his board and room. About two years prior to his death he suffered a "stroke", and was not in good health, although able to be about and to attend to his business affairs until shortly before his death. He looked after the repairs, insurance, and rentals of several rent houses in Austin, paying his bills by checks, visited with neighbors and his granddaughter, who was the daughter of his deceased daughter.

By his will he devised his household goods and personal effects, several rent houses and lots in Austin, and one-half of the residue of his estate consisting of money and notes, to his daughter, Mrs. Pearson; and devised several rent houses and lots in Austin, and one-half of the residue of his estate to his granddaughter, appellee Mrs. Laws. These devisees undertook to administer the estate between themselves without probating the will, paying the debts by jointly signing checks against deceased's account in a bank, including one for $30 for deceased's board and room for the last month of his lifetime. Nothing was said at that time about his owing appellant and his wife for the services sued for herein. In 1909, Eklund as surety paid a note for the father of appellee Mrs. Laws. A controversy arose as to whether Mrs. Laws should pay this debt to Mrs. Pearson, and precipitated the probation of the will; and then this suit was filed against the executor for the services of

appellant and his wife. Mrs. Laws knew nothing of the suit or claim until after the first judgment was rendered in favor of appellant and his wife for the services sued for.

One witness, a relative of Eklund, testified that he told her his daughter and son-in-law were caring for him and looking after his property and rentals; and the $30 per month he was paying for his board and room did not pay for what was being done for him, and as follows:

"He said, 'Yes, I ban very lucky and when I die I will leave her a thousand dollars,' and he said in Swedish, 'Hän skullä givä henna lite mer pänga,' which means, he was going to give her a little more money."

"Yes; Uncle Charlie often expressed his gratitude for Mrs. Pearson in looking after his property and collecting rents for him."

Another witness, a neighbor of Eklund, testified that he expressed to her his gratitude to his daughter and son-in-law for caring for him and looking after his property; and that Eklund intended to leave a part of his estate to his daughter. This he did by leaving the aforementioned property to her. No value was proved as to this property, but it was shown to be household furniture, personal effects, several rent houses in Austin, money and notes.

■ The foregoing evidence did not show either an express or implied agreement on the part of Eklund to pay appellant and his wife for the services rendered under the applicable rule stated in the case of McFaddin v. Trahan, Tex.Civ.App., 80 S.W.2d 492, 493, as follows: "The rule seems to be well settled that, where persons, especially where related by blood or marriage, are living together as one household, services there performed for each other are presumed to be gratuitous, and an express contract for remuneration must be shown, or that circumstances existed clearly showing a reasonable and proper expectation or mutual intention that there would be compensation."

See also Ashmore v. Pike, Tex.Civ.App., 108 S.W.2d 276; Jaye v. Wheat, Tex.Civ. App., 130 S.W.2d 1081; Rockowitz v. Rockowitz, Tex.Civ.App., 146 S.W. 1070; Dyess v. Rowe, Tex.Civ.App., 177 S.W. 1001; and Barnes v. Holson, Tex.Civ.App., 250 S.W 238.

■ Summed up, the evidence was to the effect that Eklund, who lived with appellant and his wife and paid board, expressed gratitude for the care and attention that his daughter and son-in-law were rendering to him, all of which he said was not costing him anything, because the $30 per month would not pay for it. His statement that the services were not costing him anything negatives any agreement to pay for them, and was merely an expression of gratitude for the services, and the statement that he intended to leave his daughter a part of his estate did not express or imply any agreement to pay for such services. He merely intended to give his daughter a part of his estate as a gift or devise, and the services rendered under these circumstances were such as would be reasonably expected to be performed by his daughter and son-in-law gratuitously. The facts manifestly did not show "that circumstances existed clearly showing a reasonable and proper expectation or mutual intention that there would be compensation" for the services rendered by appellant and his wife.

■ We are also of the view that the evidence did not fix any value of the services sued for upon which a jury verdict or judgment could be based or sustained.

With respect to the services rendered by appellant, one instance was shown where he and his wife cleaned up the premises of one rent house after it had been repaired, and on one occasion he took Eklund's check in payment of some repairs done on a rent house to the contractor who did the repairs. The two witnesses for appellant testified that Eklund told them that appellant assisted him in collection of rentals and looking after his property; and that he was going to leave appellant's wife a part of his estate. No witness even attempted to estimate the value of the services rendered by appellant, and in consequence neither the jury nor the court could determine the value of them.

■ With respect to the services of appellant's wife, one witness, a graduate nurse, testified that after Eklund returned to his daughter's home after his stroke, the daughter gave him medicine and looked after him. He was up and about most of the time thereafter until shortly before his death. When he became ill for a few days, a night nurse would be employed, and his daughter would care for him in daytime. The graduate nurse testified that

the services of a graduate nurse was $6 per day. The daughter was not a graduate nurse, nor even a practical one, so far as the testimony showed; and there was no evidence as to the value of her services over and above the $30 monthly which was paid to her by her father; and in consequence neither the jury nor the court could determine the value of such services. Parks v. Kelley, Tex.Civ.App., 126 S.W.2d 534.

The judgment of the trial court is affirmed.

Affirmed.